# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

TRICIA C. DEFOUR, *on behalf of herself and all similarly situated consumers*,

          Plaintiff,

v.

UNITED ASSET MANAGEMENT, LLC,

          Defendant.

Civil Action No. 3:21-cv-795

## **VERIFIED COMPLAINT**

Plaintiff Tricia C. DeFour, *on behalf of herself and all similarly situated consumers, by counsel*, files this Verified Complaint against Defendant United Asset Management, LLC ("United Asset"). In support of her Complaint, Plaintiff alleges as follows:

## **PRELIMINARY STATEMENT**

1. Ms. DeFour has owned her home since 2006 and lives there with her daughter and 22-month-old granddaughter. Even though she is current on her first mortgage, she is facing the imminent foreclosure of her home because United Asset is attempting to collect her second mortgage, which was apparently charged off years ago.

2. After purchasing her mortgage sometime in 2021—the exact date is unknown because United Asset failed to inform Ms. DeFour that it had purchased her loan—United Asset claims that Ms. DeFour owes over $70,000 for a second mortgage that had an original balance of $34,200. Even though the mortgage's prior lenders and servicers waived interest and late fees starting sometime after December 2011, United Asset has retroactively applied those late fees and interest charges to the outstanding balance on the loan.

3. As a result, Ms. DeFour is now facing imminent foreclosure, which will strip her of the significant equity that she has built in her home since she purchased it in 2006.

4. Accordingly, Ms. DeFour alleges a class claim against United Asset for failing to notify her of the assignment of her second mortgage in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. 1641(g).

5. She also alleges individual claims against United Asset for its violations of the FDCPA, 15 U.S.C. §§ 1692e and 1692f because it made false and misleading representations regarding her second mortgage and employed unconscionable and deceptive means in its collection on her second mortgage. She also alleges a breach of contract because United Asset has proceeded with the foreclosure of her home even though it did not comply with the conditions precedent to the foreclosure listed in her Deed of Trust.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k. The Court has supplemental jurisdiction over Ms. DeFour's state law claims under 28 U.S.C. § 1367.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

## PARTIES

8. Ms. DeFour is a natural person who lives in Henrico County, Virginia. She is a consumer as defined by 15 U.S.C. § 1692a(3).

9. United Asset is a California limited liability company authorized to do business in Virginia through its registered offices in Mechanicsville, Virginia. United Asset is a debt collector

as defined by 15 U.S.C. § 1692a(3) because it uses interstate commerce in its business, the principal purpose of which is debt collection.

10. Upon information and belief, United Asset's primary business is purchasing defaulted second mortgages on the secondary loan market for nominal amounts and then seeking to recover the full amounts from consumers through foreclosure sales of their homes.

11. These mortgages often have been defaulted for years. United Asset then seeks to collect amounts not permitted by law or the underlying loan contracts, including improper interest and late fees (including interest and fees waived by prior lenders and servicers), taking advantage of the fact that consumers likely do not have documentation regarding these old debts.

## FACTS

12. Ms. DeFour purchased her house in Henrico County, Virginia in December 2006.

13. As was common at that time, Ms. DeFour financed her house using two mortgages.[1]

14. Ms. DeFour's second mortgage was originated by Lehman Brothers Bank, FSB—a bank that failed in 2008 largely due to its risky investment in subprime mortgages.[2]

15. Ms. DeFour's Note and Deed of Trust for her second mortgage required all notices regarding the property to be sent to her property address unless she requested that they be sent to a different property.

16. Ms. DeFour made all of her payments on her second mortgage through November 2011.

---

[1] https://www.consumerfinance.gov/ask-cfpb/what-is-a-piggyback-second-mortgage-en-1955/ (last visited Dec. 15, 2021).

[2] Wiggins, Rosalind Z., Thomas Piontek, and Andrew Metrick, The Lehman Brothers Bankruptcy A: Overview, *Yale Program on Financial Stability Case Study* 2014-3A-V1 at 2, October 2014.

17. In December 2011, however, she stopped receiving mortgage statements for her second mortgage.

18. Ms. DeFour's credit reports indicate that her loan was current through this time and was then transferred to another lender in December 2011.

19. Ms. DeFour did not receive notice of the transfer or to which entity she should make her monthly mortgage payments.

20. Ms. DeFour did not receive any other notices regarding her second mortgage until 2021.

21. Starting in 2021, Ms. DeFour learned that a company called Sortis Financial had sent some mail to her mother's house—where she had not lived since she purchased her home in 2006.

22. These statements appeared to relate to her second mortgage.

23. For example, a statement dated March 21, 2021 stated that she owed a balance of $33,563.86.

24. According to this statement, however, Sortis was not charging any interest or late fees on the loan.

25. Sortis's statement also represented that the debt was past the statute of limitations:

> **Disclosure**
> The law limits how long you can be sued on a debt. Because of the age of your debt, Citi Global cannot sue you for it. If you do not pay the debt, Citi Global may report or continue to report it to the credit reporting agencies as unpaid.

26. Upon information and belief, sometime after this statement, United Asset purchased Ms. DeFour's mortgage from Citi Global.

27. United Asset never notified Ms. DeFour that it had acquired her loan.

28. Instead, United Asset hired FCI Lender Services, LLC ("FCI") to service Ms. DeFour's mortgage loan.

29. In servicing Ms. DeFour's loan, FCI was acting as United Asset's agent.

30. On or around June 18, 2021, FCI sent a monthly mortgage statement addressed to Ms. DeFour at her mother's address, again where she had not lived for more than 15 years.

31. This statement represented that Ms. DeFour was past due $38,201.23 on her second mortgage and owed another $33,563.86 in principal, with no explanation of why the balance had increased so much since March.

32. After she received this statement, Ms. DeFour received a notice indicating that United Asset intended to foreclose on her home.

33. On July 28, 2021, United Asset, through its attorneys, sent Ms. DeFour a dunning letter stating that Ms. DeFour was past due $38,684.87 on her second mortgage and indicated it would start foreclosure proceedings on her home.

34. This amount was incorrect. Upon information and belief, this amount included amounts not authorized by Ms. DeFour's Note or Deed of Trust as well as interest and late fees that the prior servicers had waived.

35. This notice was defective in several respects.

36. Most importantly, yhe acceleration notice stated that Ms. DeFour's mortgage was past due in the amount of $38,684.87.

37. Again, this amount was incorrect because it included fees and charges that Ms. DeFour did not owe.

38. Therefore, Ms. DeFour's loan was never properly accelerated.

39. United Asset, through its agents, has since sent Ms. DeFour correspondence indicating that she owes more than double the original amount of her second mortgage.

40. For example, on August 16, 2021, United Asset, through its agents, indicated that the payoff amount of Ms. DeFour's mortgage was $70,024.22.

41. This amount was incorrect because it included interest and fees that the previous lenders and servicers had waived.

42. And even though it never properly accelerated her loan, United Asset proceeded to initiate a non-judicial foreclosure sale of Ms. DeFour's home.

43. The foreclosure sale is currently scheduled for December 21, 2021.

### COUNT ONE:
### Violation of TILA, 15 U.S.C. § 1641(g)
### (Class Claim)

44. Ms. DeFour incorporates by reference each of the allegations set forth in the preceding paragraphs.

45. Under Rule 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class (the "TILA Class"):

> All consumers: (1) who are subject to a mortgage assigned to United Asset; (2) where United Asset was assigned the mortgage within one year of the filing of this lawsuit; and (3) to whom United Asset did not send a letter within 30 days of the assignment notifying the consumer of the assignment.

46. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Ms. DeFour alleges that the class members are so numerous that joinder of all is impractical. Upon information and belief, United Asset purchased Ms. DeFour's mortgage in a large debt portfolio that included

6

thousands of mortgages and, and a result of its standard and uniform procedures, failed to notify any of the borrowers that it had purchased their mortgage. These class members' names and addresses are identifiable through United Asset's internal business records, and they may be notified of this litigation by published or mailed notice.

47. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether United Asset's failed to send Ms. DeFour and the putative class members the appropriate TILA notice when it purchased their mortgages; (2) whether United Asset's conduct violated TILA; and (3) the appropriate amount of statutory damages and actual damages to be awarded to each member of the class.

48. **Typicality. Fed. R. Civ. P. 23(a)(3).** Ms. DeFour's claims are typical of the claims of each putative class member. In addition, Ms. DeFour is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

49. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Ms. DeFour is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the class members that she seeks to represent. Ms. DeFour has retained counsel competent and experienced in class-action litigation, and she intends to continue to prosecute the action vigorously. Ms. DeFour and her counsel will fairly and adequately protect the putative class members' interests. Neither Ms. DeFour nor her counsel have any interests that might cause them to not vigorously pursue this action.

50. **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by United Asset's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

51. On one or more occasions within the past year, United Asset violated 15 U.S.C. § 1641(g) by failing send Ms. DeFour and the putative class members the required notification and disclosures that it had been assigned their mortgage within 30 days of receiving the assignment.

52. As a result of United Asset's violations of 15 U.S.C. § 1641(g), Ms. DeFour and the putative class members suffered concrete and particularized harm, including improper fees and charges, as well as the deprivation of information to which they were statutorily entitled.

53. Ms. DeFour and the putative class members are entitled to recover actual damages, statutory damages, costs, and attorneys' fees from United Asset in an amount to be determined pursuant to 15 U.S.C. § 1640.

**COUNT TWO:**
**Violation of FDCPA, 15 U.S.C. § 1692e**
**(Individual Claim)**

54. Ms. DeFour incorporates each of the preceding allegations.

55. United Asset repeatedly violated 15 U.S.C. § 1692e(2) by repeatedly misrepresenting the amount due on Ms. DeFour's second mortgage.

56. United Asset also repeatedly violated 15 U.S.C. § 1692e(5) by assessing late charges and interest that had been previously waived and threatening to foreclose on Ms. DeFour's home when it had no legal right to do so because it had not properly accelerated her loan.

57. United Asset also repeatedly violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect or attempt to collect on the loan, including but not limited to, overcharging Ms. DeFour for her second Mortgage, and providing Ms. DeFour with conflicting and inconsistent information regarding the status and amount of her mortgage.

58. As a result of United Asset's repeated violations of 15 U.S.C. § 1692e, Ms. DeFour suffered concrete and particularized harm including the incurring of improper fees, late charges, and interest on their mortgage account, aggravation, and other emotional distress. She is also facing the impending foreclosure of her home and the loss of substantial equity in the property.

59. Based on United Asset's noncompliance with § 1692e, Ms. DeFour is entitled to recover actual damages, statutory damages, reasonable attorneys' fees, and costs, under 15 U.S.C. § 1692k.

**COUNT THREE:**
**Violation of FDCPA, 15 U.S.C. § 1692f**
**(Individual Claim)**

60. Ms. DeFour incorporates each of the preceding allegations.

61. United Asset repeatedly violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Ms. DeFour.

62. United Asset's noncompliance with 15 U.S.C. § 1692f included threatening to foreclose on Ms. DeFour's home without any legal right to do so, sending notifications about the mortgage to the wrong address, and assessing improper interest and late charges.

63. As a result of United Asset's repeated violations of 15 U.S.C. § 1692e, Ms. DeFour suffered concrete and particularized harm including the incurring of improper fees, late charges, and interest on their mortgage account, aggravation, and other emotional distress. She is also facing the impending foreclosure of her home and the loss of substantial equity in the property.

64. Based on United Asset's noncompliance with § 1692f, Plaintiff is entitled to recover actual damages, statutory damages, reasonable attorneys' fees, and costs, under 15 U.S.C. § 1692k

## COUNT FOUR:
## BREACH OF CONTRACT
### (Individual Claim)

65. Ms. DeFour incorporates each of the preceding allegations.

66. A Deed of Trust is construed under Virginia law as a contract.

67. Under Ms. DeFour's Deed of Trust, United Asset was obligated to send all required notices to Ms. DeFour at her property address unless she specified a different address.

68. Ms. DeFour never authorized notices regarding her second mortgage to be sent anywhere other than her property address.

69. United Asset breached the Deed of Trust by sending notices regarding Ms. DeFour's mortgage to her mother's address instead of the property address. As the purported assignee of this debt, it is liable for those actions by the prior creditors.

70. Because of its failure to communicate at all with Ms. DeFour, as is explicitly required under the Deed of Trust, it has breached the agreement.

71. In addition, as a precondition to foreclosure under the terms of the Deed of Trust, United Asset was required to provide Ms. DeFour with a notice of default containing specific information about the default and how she could cure it.

72. United Asset's default notice was defective because it listed an incorrect amount due on the loan.

73. A notice of default is a condition precedent to acceleration and foreclosure. *Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114, 121 (2008) ("Because Bayview did not comply with a condition precedent under the Deed of Trust . . . Bayview has not acquired the right to accelerate payment under the terms of the Deed of Trust.").

74. Defendant breached the Deed of Trust and did not satisfy the preconditions to foreclosure due to its failure to identify the nature or any default.

75. United Asset's breach of Deed of Trust has caused Ms. DeFour to suffer actual damages, including the assessment of fees and costs that she does not owe.

76. Additionally, it has waived the right to enforce the Deed of Trust through nonjudicial foreclosure when it has materially breached this contract for over a decade to Plaintiff's detriment.

77. Ms. DeFour seeks an award of her actual damages from United Asset.

78. Additionally, or in the alternative, Ms. DeFour requests that the Court enjoin United Asset from enforcing the Deed of Trust, including the foreclosure sale presently scheduled for December 21, 2021 under Va. Code § 8.01-622.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. DeFour, on behalf of herself and the putative class members, moves for class certification and for statutory, actual, and punitive damages, as well as her attorneys' fees and costs as pleaded above against United Asset for the class claim, as well as actual, statutory, and punitive damages, injunctive relief, and attorneys' fees and costs for her individual claims; for pre-judgment and post-judgment interest at the legal rate, and any other relief the Court finds appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**TRICIA C. DEFOUR**

By: ____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
*Counsel for Plaintiff*

## VERIFICATION OF COMPLAINT

I, Tricia C. DeFour, declare:

1. I am the Plaintiff in attached complaint.

2. I verify that I have review the attached complaint and that the allegations made in it are true and correct to the best of my knowledge, information, and belief.

3. I have personal knowledge of the facts set forth in this Verified Complaint, and if called upon to do so, I could and would competently testify thereto.

4. I declare under penalty of perjury that the foregoing information is true and correct.

Executed in Richmond, Virginia on December 17, 2021.

*/s/ Tricia C. DeFour*
Tricia C. DeFour